**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EPSILON ENERGY USA, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 3:22-cv-00679** |
| | : | |
| **CHESAPEAKE APPALACHIA,** | : | **JUDGE WILSON** |
| **L.L.C.,** | : | |
| | : | **ELECTRONICALLY FILED** |
| **Defendant.** | : | |

**CHESAPEAKE APPALACHIA, L.L.C.'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO STAY PENDING RESOLUTION**
**OF APPEALS BEFORE THE UNITED STATES**
**COURT OF APPEALS FOR THE THIRD CIRCUIT**

**INTRODUCTION**

The interpretation of the same Joint Operating Agreements (the "JOAs") is

back again before this Court.  The hurry up --- start, stop, and start again ---

disputes between Epsilon Energy USA, Inc. ("Epsilon") and Chesapeake

Appalachia, L.L.C. ("Chesapeake") over contractual rights and requirements

pursuant to the JOAs are well-known by this Court.  This latest action should be

stayed pending the resolution of appeals before the United States Court of Appeals

for the Third Circuit ("Third Circuit") in *Epsilon Energy USA, Inc. v. Chesapeake*

*Appalachia, L.L.C.,* Nos. 22-1280 and 22-1376 (3d Cir.) ("*Third Circuit Appeals*").

Consistent with the inherent authority of the Court to manage its docket, a stay is

warranted to simplify issues, conserve judicial resources and avoid the risk of inconsistent rulings and serial appeals.

*First*, a stay will prevent both Chesapeake—and Epsilon—from being forced to relitigate jurisdictional and case dispositive issues for preservation in this matter. The Third Circuit is poised to determine (1) whether this Court erred in finding that other parties to the JOAs are not "indispensable" to the litigation, and (2) whether Article VI.2(a) of the JOAs allows Epsilon to appoint itself or its affiliate "Operator" without the consent or participation of *any* other JOA Party. These issues may be dispositive of this Court's subject-matter jurisdiction over this case and are at the heart of the ultimate relief sought by Epsilon under the JOAs. Issuing a stay to allow for a final determination by the Third Circuit will thus prevent wasteful briefing in this matter by both parties.

*Second*, a stay in this matter will preserve scarce judicial resources. This Court, burdened with a fourth matter concerning this dispute between the parties, will benefit from the finality afforded by resolution of the *Third Circuit Appeals*. For example, if the Third Circuit determines that the Absent JOA Parties are indispensable, this Court would be deprived of subject-matter jurisdiction. Also, pertinent provisions of the JOAs will be reviewed. A brief stay would avoid that potential waste of this Court's resources, or, in the event of affirmance, would streamline this litigation by avoiding the delay wrought by again re-examining

these issues.

For these reasons, as more fully detailed below, this Court should grant Chesapeake's request for a stay and exercise its inherent authority to stay this matter pending resolution of the *Third Circuit Appeals*.

## BACKGROUND

Epsilon and Chesapeake have a lengthy history of litigation over the JOAs between them and a half dozen "Absent JOA Parties" including at least one which destroys diversity jurisdiction (Epsilon, Chesapeake and the absent JOA Parties are collectively referred to as the "JOA Parties").   Including the present dispute, Epsilon has commenced four federal court actions (so far) against Chesapeake within the span of four years.

***Epsilon I***.  On September 20, 2018, Epsilon filed the first of its four actions against Chesapeake.  *See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.,* No. 3:18-CV-1852 (M.D. Pa. Sept. 20, 2018) ("*Epsilon I*").  *Epsilon I* resulted in an October 8, 2018 Settlement Agreement (the "2018 Settlement Agreement") and a voluntary dismissal.  (*See Epsilon I*, Notice of Voluntary Dismissal (ECF 29).)

***Epsilon II***.  Less than three years later, on March 10, 2021, Epsilon commenced a second action against Chesapeake seeking, *inter alia*, declaratory and injunctive relief based upon an alleged breach of contractual rights under the

3

JOAs and 2018 Settlement Agreement.  *See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, No. 1:21-cv-433 (M.D. Pa. March 10, 2021) ("*Epsilon II*").  (*See Epsilon II* Compl. (ECF 1) at ¶¶ 11-33, 37, 42-45, 47, 54-55, 105-111, 113-118, 120-125, 127-135, 137-142, 144-148.)  Due to a violation of the Confirmation Order and discharge injunction from the United States Bankruptcy Court for the Southern District of Texas, Epsilon dismissed *Epsilon II*.  (*See Epsilon II* (ECF 30, 30-1 and 33).)

    *Epsilon III.*  Epsilon filed its third action against Chesapeake on April 9, 2011, asserting claims for declaratory and injunctive relief based upon the JOAs and 2018 Settlement Agreement.  *See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.,* No. 1:21-CV-658 (M.D. Pa. April 9, 2021) ("*Epsilon III*").  (*See Epsilon III* Compl. (ECF 1) at ¶¶ 11-33, 37, 42-45, 47, 56-57, 109-117, 119-129, 131-145, 147-150.)  *Epsilon III* involved a two-day injunction hearing before this Court in May 2021 which resulted in a denial of Epsilon's request for a preliminary injunction.  (*See Epsilon III* (ECF 89).)  Thereafter, this Court dismissed Epsilon's Amended Complaint.  (*See Epsilon III* (ECF 121).)  Following an unsuccessful motion for reconsideration, Epsilon filed an appeal of *Epsilon III* and Chesapeake filed a cross-appeal before the Third Circuit.  (*See Epsilon III* (ECF 135, 138); *see also Third Circuit Appeals*.)  That appeal is pending.

*Epsilon IV.*  After the Parties filed their respective appeals with the Third Circuit related to *Epsilon III*, Epsilon filed this nearly identical declaratory judgment action on May 9, 2022 against Chesapeake related to the same JOAs and the same 2018 Settlement Agreement.  *See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, No. 3:22-cv-679 (M.D. Pa. May 9, 2022) ("*Epsilon IV*").  (*See also Epsilon IV* Compl. (ECF 1) at ¶¶ 11-32, 37-39, 44-49, 88-96, 98-103.)  As demonstrated below, Epsilon's requests for relief related to the JOAs and the 2018 Settlement Agreement in *Epsilon III* and *Epsilon IV* overlap in substance.[1]

---

[1]  Additionally, Epsilon's claims for specific performance in *Epsilon III* overlap with its claims in *Epsilon IV* as they relate to Epsilon's request for Chesapeake to withdraw its appeal before the Environmental Hearing Board, and refrain from appealing or contesting, Epsilon's permitting activity before the Pennsylvania Department of Environmental Protection and to otherwise reasonably cooperate with Epsilon.  (*See, e.g., Epsilon III* Am. Compl. (ECF 104) at Count II-III WHEREFORE and *Epsilon IV* Compl. (ECF 1) at Count II WHEREFORE.)

| ***Epsilon III* – Amended Complaint** | ***Epsilon IV* - Complaint** |
|---|---|
| **Count I – Declaratory Judgment (Epsilon's Right to Drill the Proposed Wells)**<br><br>Wherefore, Epsilon asks the Court to enter a judgment in its favor declaring that, if CHK elects not to participate in a new well proposed by Epsilon and declines to serve as the operator, then:<br><br><br><br>• Epsilon (or another consenting party) has the right to drill and operate the proposed new well;<br><br>• CHK has an obligation to allow Epsilon (or another consenting party) to access the jointly-owned assets in order to do so, including taking any actions required to facilitate such access;<br><br>• The permit evidencing the right to withdraw water from Wyalusing Creek, the Craige Well Pad, and the Marbaker Impoundment are co-owned assets that Epsilon is entitled to utilize to drill such a proposed new well; and<br>• CHK must otherwise cooperate with the operator designated by the consenting parties to facilitate those drilling operations. | **Count I – Declaratory Judgment (JOAs and Settlement Agreement)**<br><br>Wherefore, Epsilon asks the Court to enter a judgment in its favor declaring that, if CHK elects not to participate in a new well proposed by Epsilon and declines to serve as the Operator for that well, then:<br><br>• Epsilon has the right to cause that new well to be drilled and placed into production;<br>• Epsilon (or one of the other consenting parties) can be designated to serve as Operator for the purpose of drilling and completing the new well;<br>• CHK has an obligation to allow Epsilon (or another consenting party designated to serve as Operator) to access all jointly-owned assets in order to drill and complete that proposed new well, including taking any actions required to facilitate such access;<br>• CHK must cooperate with Epsilon (or another consenting party designated to serve as Operator) to obtain any permits needed to drill and complete that well, including any permits issued by the PaDEP; and<br>• CHK must otherwise reasonably cooperate with Epsilon (or another consenting party designated to serve as Operator) to facilitate the drilling and completion of that new well. |

The Third Circuit is currently presiding over appeals involving the same Parties and same contract interpretation issues related to the same JOAs and 2018 Settlement Agreement put at issue, again, by Epsilon in *Epsilon IV*.  (*See Third Circuit Appeals*; *see also* Concise Summaries of the Case at Doc. Nos. 9-1 and 14-1 identifying the JOAs and 2018 Settlement Agreement.)

For example, Epsilon's appeal to the Third Circuit seeks appellate review of this Court's decision dismissing *Epsilon III* "based on a misinterpretation of the JOA[s]."  (*See, e.g., Third Circuit Appeals* Doc. No. 9-1.)  In its cross-appeal, Chesapeake seeks review of this Court's conclusion that the JOAs permit Epsilon to appoint itself or its affiliate "Operator" without the consent or participation of any other JOA Party.  (*Id.* at Doc. No. 14-1.)  This latter issue is directly put at issue by Epsilon, again, in *Epsilon IV*.  (*See, e.g., Epsilon IV* Compl. (ECF 1) at ¶ 89 alleging "if CHK elects not to participate in a Well Proposal that Epsilon has issued to drill a new well, the JOAs authorize the consenting parties to appoint one of those consenting parties to serve as Operator to drill the well;" Count II WHEREFORE at ¶ 2 requesting a declaration that "Epsilon (or one of the other consenting parties) can be designated to serve as Operator for the purposes of drilling and completing the new well.")

Further, Epsilon again elected strategically not to join the other parties to the JOAs whose contractual rights are at stake.  (*See generally Epsilon IV* Compl.)  On

this point, the Third Circuit will also address Epsilon's failure to join the necessary and indispensable parties to the JOAs in *Epsilon III* which, if joined, divest this Court of subject-matter jurisdiction since one of the absent JOA parties shares Texas citizenship with Epsilon.  (*See Third Circuit Appeals* Doc No. 14-1.)

## ANALYSIS

The authority to issue a stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also Cheyney State College Fac. v. Hufstedler,* 703 F.2d 732, 737-38 (3d Cir. 1983) (quoting *Landis*); *Bechtel Corp. v. Local 215, Laborers' Intern. Union of N. America, AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("[A] court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.").  In exercising this discretion, a court should consider the following four practical considerations: "(1) the length of the requested stay; (2) the 'hardship or inequity' that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; (4) whether a stay will simplify issues and promote judicial economy."  *See Structural Grp., Inc. v. Liberty Mut. Ins. Co.,* No. 07-1795, 2008 WL 4616843, *5 (M.D. Pa. Oct. 16, 2008) (citing *Landis,* 299

8

U.S. at 254–55).[2]  Applied in the instant matter, these factors weigh heavily in favor of a stay pending resolution of the *Third Circuit Appeals* in the previously-filed *Epsilon III* matter.

The first practical consideration—the length of the requested stay—weighs in favor of staying this matter.  The requested stay, limited in duration to the time required for the Third Circuit to resolve the *Third Circuit Appeals,* is one of "moderate length" aimed at streamlining the issues of this litigation, as countenanced by *Landis*.  *See Cheyney State Coll. Fac.,* 703 F.2d at 738 ("We emphasize that *Landis* approved stays of moderate length, and not those of indefinite duration which require a party to take affirmative steps for dissolution."). While stays of indefinite duration are discouraged, courts within this Circuit regularly exercise their authority to stay matters pending resolution of appeals in similar actions.  *See, e.g., Berger v. Weinstein,* No. 08-4059, 2008 WL 4858318 (E.D. Pa. Nov. 10, 2008) (granting stay of second action involving the same parties and issues pending resolution of Third Circuit appeal of prior action)*; Vasvari v. Rite Aid Corp.*, No. 09-2069, 2010 WL 3328210, at *2 (M.D. Pa. Aug. 23, 2010) (granting stay pending the resolution of an appeal in a related and potentially dispositive matter); *Cliffstar Corp. v. Ajinomoto Co., Inc.*, No. 09-3867, 2010 WL

---

[2]  Pursuant to L.R. 7.8(a), the unpublished decisions cited herein are reproduced in the attached Appendix.

11710671, at *2 (E.D. Pa. Nov. 10, 2010) (same); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-2926, 2004 WL 1615307, at *7 (E.D. Pa. July 26, 2004).

In the *Third Circuit Appeals,* the Clerk of Court for the Third Circuit recently issued a scheduling order which would close briefing on October 14, 2022.  (*See Third Circuit Appeals*, Cross-Appeal Briefing and Scheduling Order (Doc. No. 17-3).)   The duration of a stay is therefore confined to the timeline for briefing and adjudication of the *Third Circuit Appeals*.  *See, e.g., Cliffstar*, 2010 WL 11710671 at *2-3 (granting stay of district court proceedings pending resolution of similar case before the Third Circuit where the interests of fairness and judicial economy are served by waiting to see how the Third Circuit decides issues also present before the district court).

The second and third practical considerations—both concerning the harm to be inflicted on the parties in the presence or absence of a stay—also weigh heavily in favor granting such relief.  First, in the absence of a stay, the parties will be forced to bear the cost of rehashing arguments decided by this Court in *Epsilon III*, but currently on appeal before the Third Circuit, *e.g.*, the indispensability of the Absent JOA Parties, and the interpretation of the JOAs, including whether Epsilon may appoint itself or its affiliate "Operator" without the consent or participation of *any* other JOA Party.  Moreover, the parties would be forced to engage in costly discovery while, *inter alia*, the threshold issue of federal subject-matter

jurisdiction, and interpretation of the JOAs, are definitively determined by the Third Circuit.  *See Berger,* 2008 WL 4858318, at *4 (finding that progressing a second action concerning the same parties and issues pending resolution of a Third Circuit appeal will "waste the parties' time and money.").  A stay will avoid this unnecessary hardship and expense to the parties, as well as this Court.

Saving the parties and the Court the cost and burden of advancing this litigation in the absence of guidance from the Third Circuit would not prejudice Epsilon.  Given the near identical nature of the current litigation to *Epsilon III*, allowing resolution of the *Third Circuit Appeals* will materially advance *Epsilon IV* by streamlining and narrowing the issues of disagreement between the parties regarding the JOAs at issue.  Indeed, while it was the third in a series of now four actions, *Epsilon III* was the first matter between the parties which progressed to decisions regarding the legal issues animating this commercial dispute.  Epsilon, Chesapeake, and the Court will benefit from a brief pause of *Epsilon IV* while the Third Circuit reviews those overlapping threshold decisions.

Finally, the fourth practical consideration—whether a stay will simplify issues and promote judicial economy—weighs definitively in favor of a stay.  *See Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (noting that a plaintiff "had no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."); *see also id.* ("The

pendency of a prior pending action in the same federal court is ground for

abatement of the second action [because] there is no reason why a court should be

bothered or a litigant harassed with duplicating lawsuits on the same docket.")

(citations and quotations omitted).  By progressing this action involving the same

parties and issues as the *Third Circuit Appeals*, the Court will be expending

judicial resources while its decisions related to the indispensability of the Absent

JOA Parties and interpretation of the JOAs are reviewed.  The threshold issue of

indispensability is capable of destroying diversity of citizenship jurisdiction, which

may render any further effort and time expended by the Court and its personnel in

this matter for naught.

Moreover, and in the event of an affirmance of the Court's decisions in

*Epsilon III*, the remaining issues of contention between the parties will be

narrowed and the Court's remaining interpretative task simplified.  *See Berger,*

2008 WL 4858318 at *4 (granting stay pending resolution of an appeal of the prior

preceding action "will clarify" the issues of the second litigation); *Cliffstar Co.*,

2010 WL 11710671, at *2 (granting stay pending appeal where "resolution of the

matter will be instructive on, and will simplify, the [] issues that are certain to arise

in the present case.").

## <u>CONCLUSION</u>

Based on the foregoing reasons, Defendant Chesapeake Appalachia, L.L.C. respectfully requests that the Court stay this proceeding until a decision is rendered by the United States Court of Appeals for the Third Circuit in the matters docketed to *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, Nos. 22-1280 and 22-1376 (3d Cir.).

Respectfully submitted:

/s/ Nicholas F. Kravitz
Daniel T. Brier
John B. Dempsey
Nicholas F. Kravitz
Richard L. Armezzani

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA  18503          Attorneys for Defendant, Chesapeake
(570) 342-6100              Appalachia, L.L.C.

Date:  June 24, 2022

## <u>CERTIFICATE OF SERVICE</u>

I, Nicholas F. Kravitz, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion for Stay was served upon the following counsel of record via the Court's ECF system on this 24th day of June 2022:

> Gregory J. Krock, Esquire
> McGuireWoods LLP
> Tower Two-Sixty
> 260 Forbes Avenue, Suite 1800
> Pittsburgh, PA  15222
>
> Elizabeth M. Thomas, Esquire
> McGuireWoods LLP
> Fifth Third Center
> 201 North Tyron Street, Suite 3000
> Charlotte, NC 28202-2146
>
> Johnathan T. Blank, Esquire
> McGuireWoods LLP
> 323 Second Street SE, Suite 700
> Charlottesville, VA 22902

> /s/ Nicholas F. Kravitz
> Nicholas F. Kravitz