# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| EPSILON ENERGY USA, INC., | Civil Action No. 3:22-cv-00679 |
| Plaintiff, | Judge Jennifer P. Wilson |
| v. | |
| CHESAPEAKE APPALACHIA, LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STAY PENDING RESOLUTION OF APPEAL BEFORE THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Gregory J. Krock
Pa. I.D. No. 78308
**McGUIREWOODS LLP**
Tower Two–Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222–3142
(412) 667–6000 (Telephone)
(412) 667–6050 (Facsimile)
gkrock@mcguirewoods

Elizabeth M. Thomas
Pa. I.D. No. 322002
**McGUIREWOODS LLP**
Fifth Third Center
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2000 (Telephone)
(704) 343-2300 (Facsimile)
ethomas@mcguirewoods.com

Jonathan T. Blank
Pro Hac Vice Forthcoming
**McGUIREWOODS LLP**
323 Second Street SE, Suite 700
Charlottesville, VA 22902
(434) 977-2500 (Telephone)
(434) 980-2222 (Facsimile)
jblank@mcguirewoods.com

*Counsel for Plaintiff Epsilon Energy USA, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................1

II.   FACTUAL BACKGROUND.......................................................4

    A.    The Settlement of Epsilon's Initial Lawsuit in 2018 ..........................5

    B.    The Lawsuit on Appeal to the Third Circuit .........................................6

III.  ARGUMENT................................................................................9

    A.    CHK is Judicially Estopped From Asserting That This Lawsuit is Virtually Identical to the Third Circuit Appeal...................................10

    B.    CHK Cannot Establish Any of the Four Factors Required for a Stay 12

        1.    The Indefinite Stay That CHK Seeks is Unreasonable in Duration ....................................................................................13

        2.    CHK Would Not Suffer any Hardship or Inequity in the Absence of a Stay.....................................................................15

        3.    Epsilon Would Face Significant Hardship if the Court Were to Grant the Requested Stay.........................................................17

        4.    A Stay Would Not Simplify the Issues or Promote Judicial Economy .................................................................................18

IV.   CONCLUSION...........................................................................19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Builders Ins. Co. v. Keystone Insurers Grp., Inc.*,
No. 4:19-CV-01497, 2020 WL 4903827 (M.D. Pa. Aug. 20, 2020)............ 16-18

*Aniskevich v. Blue Ridge Pressure Castings, Inc.*,
No. CIV.A. 3:08-0966, 2009 WL 3335545 (M.D. Pa. Oct. 14, 2009)...............10

*Barnard v. Lackawanna Cnty.*,
No. CV 3:15-2220, 2016 WL 362424 (M.D. Pa. Jan. 29, 2016)............ 12-13, 17

*Cheyney State College Fac. v. Hufstedler*
703 F.2d 732 (3d Cir. 1983) ................................................................14

*Cliffstar Corp. v. Ajinomoto Co., Inc.*,
No. 09-3867, 2010 WL 11710671 (E.D. Pa. Nov. 10, 2010).............................14

*CTF Hotel Holdings, Inc v. Marriott Int'l, Inc.*,
381 F.3d 131 (3d Cir. 2004) ..........................................................12, 15

*Cunningham v. M & T Bank Corp.*,
No. 1:12-CV-1238, 2014 WL 131652 (M.D. Pa. Jan. 14, 2014) ......................16

*Danise v. Saxon Mortg. Servs. Inc*,
738 F. App'x 47 (3d Cir. 2018) ..........................................................10

*Germann v. Watts Regulator Co.*,
No. 1:15-CV-1037, 2015 WL 9182805 (M.D. Pa. Dec. 17, 2015) ....................14

*New Hampshire v. Maine*,
532 U.S. 742 (2001)..........................................................................10

*Scarano v. Cent. R. Co. of New Jersey*,
203 F.2d 510 (3d Cir. 1953) ..............................................................12

*Smithkline Beecham Corp. v. Apotex Corp.*,
No. 99-2926, 2004 WL 1615307 (E.D. Pa. July 26, 2004) ..........................14, 15

ii

*United States v. Breyer*
   41 F.3d 884 (3d Cir. 1994) ..................................................................9

*Vasvari v. Rite Aid Corp.,*
   No. 09-2069, 2010 WL 3328210 (M.D. Pa. Aug. 23, 2010).......................13, 14

Plaintiff Epsilon Energy USA, Inc. ("Epsilon"), by and through its undersigned counsel, files its memorandum of law in opposition to Defendant Chesapeake Appalachia, LLC's Motion to Stay Pending Resolution of Appeals Before the United States Court of Appeals for the Third Circuit ("Motion to Stay").

## I.    <u>INTRODUCTION</u>

This one-count lawsuit involves a single issue: if Defendant Chesapeake Appalachia, LLC ("CHK") declines to participate in a new well that Epsilon has proposed under the parties' operating agreements (the "JOAs") and prior settlement agreement, does CHK have the obligation to reasonably cooperate so that Epsilon can drill that well?  CHK's delay tactics over the past four years have prevented Epsilon from obtaining a ruling on this critical issue while the drilling of new wells under the JOAs has virtually come to a halt.  In the Motion to Stay, CHK asks the Court to postpone this case pending the resolution of an appeal before the United States Court of Appeals for the Third Circuit (the "Third Circuit") even though the Third Circuit admittedly ***will not address*** the issue involved in this lawsuit.  The Court must reject CHK's request because (1) the doctrine of judicial estoppel precludes the arguments set forth in the Motion to Stay and (2) CHK cannot satisfy the four factors necessary to obtain a stay.

Judicial estoppel applies because CHK obtained the dismissal of the lawsuit now pending before the Third Circuit by taking the exact opposite position that it

1

asserts in the Motion to Stay. Epsilon opposed dismissal on the basis that, in its amended complaint, Epsilon sought a declaratory judgment that—if CHK declines to participate in a new well that Epsilon proposes—Epsilon can drill that new well. CHK disagreed. CHK argued that the prior lawsuit does not involve a general request for declaratory relief seeking to interpret the JOAs, but instead, involves Epsilon's right to proceed with specific wells that it proposed in May 2021. The Court agreed with CHK and forced Epsilon to file a separate lawsuit to pursue general declaratory relief regarding its rights under the JOAs. Now that Epsilon has filed a new lawsuit, CHK cannot change its position and argue that this lawsuit is virtually identical to the prior suit (now pending before the Third Circuit).

Even if judicial estoppel did not apply, the Motion to Stay would fail because CHK cannot satisfy any of the four elements required to obtain a stay. First, the requested stay is not reasonably limited in duration. CHK seeks a stay of uncertain duration that would unquestionably exceed the 90-day period that this Court has previously found to be reasonable. The briefing in the Third Circuit appeal is not set to close until October 2022. Accordingly, oral argument is expected to occur in the first quarter of 2023. The Third Circuit advised during the mediation process that it does not expect to resolve the appeal until the Spring of 2023 at the earliest. CHK's proposed stay could therefore prevent this lawsuit from proceeding for more than a full year.

Second, CHK has not met its burden in showing that it faces a "clear case of hardship or inequity" absent the requested stay.  CHK merely asserts that it will be forced to participate in discovery while the Third Circuit appeal proceeds.  However, requiring CHK to participate in such discovery is not inequitable because the Third Circuit's ruling will not obviate the need for that discovery.  The parties will need to conduct discovery regarding their respective rights and obligations under the JOAs regardless of the manner in which the Third Circuit rules.

Third, there is more than a "fair possibility" that Epsilon will be harmed by a stay.  Epsilon believed that the parties resolved the issue regarding its rights under the JOAs when they signed a written settlement in 2018 to terminate a prior lawsuit that Epsilon filed against CHK.  However, CHK has now breached that settlement agreement by asserting the very same position that it asserted in the prior lawsuit.  Staying these proceedings, and thereby permitting CHK to continue to prevent Epsilon from pursuing its right to drill new wells under the JOAs, will cause extensive harm to Epsilon.

Finally, any efforts taken in this litigation will be beneficial in the future.  The Third Circuit's ruling will not shed any light on the sole issue involved in this lawsuit regarding Epsilon's right to drill a new well in which CHK has declined to participate.  Accordingly, the valuable discovery that Epsilon seeks to conduct will

not be rendered meaningless by any ruling issued by the Third Circuit. A stay will therefore not serve the interest of judicial economy.

## II.    FACTUAL BACKGROUND

Epsilon and CHK are parties to several JOAs in which a number of natural gas producers agreed to combine and collectively develop their assets in a defined geographic area located in Susquehanna County, Pennsylvania known as the "Auburn Development." ECF No. 1 at ¶ 50. Epsilon has been forced to file a number of lawsuits against CHK since 2018 in an attempt to exercise its rights under the JOAs to drill new wells in the Auburn Development.

During the first seven years in which the JOAs were in effect (2009-2016), CHK put 92 wells into production in the Auburn Development on behalf of the JOA Parties—an average of 13 wells per year. However, the drilling of new wells slowed down and has now come to a standstill. Despite the lawsuits addressed below, CHK has only put into production 11 wells in which Epsilon has an interest since the parties entered the settlement agreement—an average of less than 3 wells per year from 2019-2022. CHK only put 3 wells in the Auburn region into production in 2021 and has not drilled a single well in 2022 (despite a dramatic increase in prices for natural gas in the United States).

A.    <u>**The Settlement of Epsilon's Initial Lawsuit in 2018**</u>

In September 2018, Epsilon filed a lawsuit against CHK in this Court at Docket No. 3:18-cv-01852. *Id.* at ¶ 33. The parties resolved that initial lawsuit by way of a Settlement Agreement and Release dated October 8, 2018 ("Settlement Agreement"). *Id.* at ¶ 37. In the Settlement Agreement, CHK agreed that—if it declines to participate in a new well that Epsilon has proposed—CHK will reasonably cooperate so that Epsilon can drill that well. *Id.* at ¶¶ 38-39. In exchange, Epsilon agreed not to propose any new wells until 2020. *Id.* at ¶ 40. Epsilon honored its commitment to refrain from proposing new wells, and accordingly, CHK completed the new wells that it preferred to drill in the Auburn Development (rather than the ones that Epsilon had proposed in 2018). *Id.* at ¶¶ 41-42.

When Epsilon's moratorium on proposing wells expired in 2020, Epsilon identified wells that it desired to drill in order to satisfy its development goals. *Id.* at ¶¶ 50-51. During communications with CHK, it became apparent that CHK was unwilling to cooperate with Epsilon in a good faith attempt to prepare a drilling plan that could satisfy both parties. *Id.* at ¶¶ 50-63. Epsilon therefore exercised its right under the JOAs to formally propose the wells it desired to drill in the Auburn Development. *Id.* at ¶ 64. When it issued the proposals in December 2020, Epsilon reminded CHK of its commitment in the Settlement Agreement to cooperate so that Epsilon could drill wells in which CHK declined to participate. *Id.* at ¶ 75. CHK

refused to honor that commitment and affirmatively opposed Epsilon's efforts to proceed with its proposed wells.  *Id.* at ¶¶ 70-83.

## B.    <u>The Lawsuit on Appeal to the Third Circuit</u>

In April 2021, Epsilon filed a complaint alleging that CHK breached the JOAs and the Settlement Agreement.  Docket No. 1:21-cv-00658, at ECF Nos. 1, 5.  CHK moved to dismiss the complaint on the basis that the other JOA parties were necessary and indispensable under Rule 19 of the Federal Rules of Civil Procedure. *Id.* at ECF Nos. 22-23.  This Court denied the motion on April 26, 2021.  The Court ruled that the absent JOA parties were necessary parties under Rule 19(a) but not indispensable parties under Rule 19(b).  *Id.* at ECF Nos. 33-35.

In conjunction with its complaint, Epsilon moved for a mandatory preliminary injunction to require CHK to cooperate so that Epsilon could drill the wells that it had proposed in December 2019.  *Id.* at ECF Nos. 80-81.  Although the Court found that Epsilon had asserted a viable claim for declaratory relief, it concluded that the request for injunctive relief was moot because the proposals Epsilon issued in December 2020 had expired.  *Id.*

Epsilon therefore issued a second set of proposals on May 25, 2021 seeking to drill new wells under the JOAs.  *Id.* at ECF No. 104-21.  In accordance with Article XVI of the JOAs, Epsilon's proposals stated that it would commence operations on those wells in October and November 2021.  *Id.*  Epsilon moved for

leave to amend its complaint to incorporate the new well proposals and clarify issues that arose during the preliminary injunction process. *Id.* at ECF No. 104. This Court granted the motion for leave, over CHK's objection, and Epsilon filed an amended complaint. *Id.* at ECF Nos. 102-03.

In July 2021, CHK moved to dismiss the amended complaint on several different grounds. *Id.* at ECF Nos. 109-10. Among other arguments, CHK argued that the JOAs require unanimous consent to drill a new well, such that Epsilon cannot drill any of its proposed wells if CHK declines to participate in those wells. *Id.* at ECF No. 111. CHK also raised the alternative argument that, because the JOAs state that proposals expire if the proposing party does not commence operations within 90 days after the expiration of the election period in which the JOA parties can decide whether to participate, the "commencement date" set forth in Epsilon's proposals must be within that 90-day period. CHK noted that Epsilon selected a commencement date outside of the 90-day period in its proposals, and for that reason, argued that Epsilon failed to comply with "conditions precedent" for drilling the new wells.

On September 22, 2021, this Court granted CHK's motion to dismiss. *Id.* at ECF Nos. 121-22. The Court concluded that the JOAs are ambiguous as to whether unanimous consent is required to drill a new well when CHK declines to participate and refuses to act as the operator. *Id.* at 17. However, the Court concluded that

7

Epsilon's proposals were "invalid" because they included a commencement date outside of the 90-day period referenced in the JOAs.  *Id.* at 22-23.  The Court dismissed the amended complaint without granting leave to amend, but expressly stated that its ruling was "without prejudice to Epsilon's right to file a new lawsuit based on new proposals made after this opinion."  *Id.*

Epsilon promptly moved for reconsideration.  *Id.* at ECF Nos. 123-24.  In its motion, Epsilon argued that its declaratory judgement claim was not based exclusively upon the proposals that Epsilon submitted in May 2021.  Although its specific performance claims were admittedly based on those proposals, Epsilon noted that its request for declaratory judgment sought an interpretation of the JOAs in general (and was therefore not tethered to the existence of any valid proposal to drill a specific well).   CHK filed a brief in opposition to the motion for reconsideration.  *Id.* at ECF No. 125.  In its opposition brief, CHK argued that Epsilon had ***not*** sought a general declaration regarding its rights under the JOAs. CHK argued that the requested declaratory relief in the amended complaint was limited to the proposals that Epsilon submitted in May 2021.  *Id.* at 12-14.

The Court agreed with CHK and denied the motion for reconsideration.  *Id.* at ECF No. 133.  The Court walked back it prior statement that Epsilon must issue new proposals in order to pursue declaratory relief, conceding that "Epsilon is correct that it ***could have*** proceeded with a declaratory judgment claim based on the

language of the JOAs generally." *Id.* at 16 (emphasis added). However, the Court interpreted Epsilon's request for declaratory relief in the amended complaint as limited to the proposals that Epsilon submitted in May 2021, and not related to Epsilon's general rights under the JOAs. *Id.* at 15-16.

Epsilon appealed the dismissal of its amended complaint to the Third Circuit. *See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, Nos. 22-1280 and 22-1376 (3d Cir.). In its appeal, Epsilon challenges this Court's ruling that the 90-day period for commencing operations under the JOAs unambiguously applies to the drilling of new wells. Epsilon contends that the 90-day period only applies to proposals to perform work on existing wells. In its cross-appeal, CHK challenges (among other issues) the Court's conclusion that the other JOA parties are not indispensable parties under Rule 19(b). Neither party challenges this Court's ruling that the JOAs are ambiguous as to whether the unanimous consent of all JOA parties is required to drill new wells.

## III.   <u>ARGUMENT</u>

"A stay is an extraordinary measure" requiring "compelling reasons for its issuance." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). Here, the Motion to Stay is based on CHK's assertion that this lawsuit is virtually identical to the subject matter of the Third Circuit appeal.

From a procedural standpoint, CHK is judicially estopped from raising this assertion because it obtained the dismissal of the prior lawsuit by asserting the opposite position. Even assuming *arguendo* that judicial estoppel does not apply, the Motion to Stay would still fail. CHK has not demonstrated (and cannot demonstrate) that any of the four requisite factors support its requested stay.

## A.   CHK is Judicially Estopped From Asserting That This Lawsuit is Virtually Identical to the Third Circuit Appeal

In determining whether judicial estoppel applies, the court must consider whether: (1) the party's later position is "clearly inconsistent" with its earlier position; (2) the party's earlier position succeeded in persuading the court so that acceptance of the later position would create "the perception that either the first or the second court was misled;" and (3) the party asserting the inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped*." New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (granting motion to dismiss where state took inconsistent position regarding physical boundaries with another state). Courts routinely apply the doctrine to prevent a party from taking an inconsistent position on an issue on which it had previously prevailed. *See Danise v. Saxon Mortg. Servs. Inc*, 738 F. App'x 47, 51 (3d Cir. 2018) (affirming that debtor who had maintained certain positions during bankruptcy was judicially estopped from asserting inconsistent positions in subsequent litigation); *Aniskevich v. Blue Ridge Pressure Castings, Inc.*, No. CIV.A. 3:08-0966, 2009 WL 3335545, at

*8 (M.D. Pa. Oct. 14, 2009) (judicial estoppel barred plaintiff from asserting a contradictory position regarding her disability).

Here, all three factors are present. CHK's current position is inconsistent with the argument in its opposition to Epsilon's motion for reconsideration in the prior lawsuit. CHK argued that the lawsuit now on appeal to the Third Circuit was limited to proposals that Epsilon submitted in May 2021 and ***did not*** involve a general request for declaratory relief regarding Epsilon's rights under the JOAs. In its Motion to Stay, CHK now contends that issues involved in the two lawsuits are virtually identical. CHK even prepared a chart comparing the requests for declaratory judgment in the two lawsuits to demonstrate that they are virtually identical. CHK's current argument blatantly contradicts its prior position.

Second, CHK was successful in the prior lawsuit. This Court accepted CHK's argument and dismissed the prior lawsuit without leave to amend. For this reason, Epsilon was forced to file this separate lawsuit to seek a general request for declaratory relief regarding its rights under the JOAs. This lawsuit ***only exists*** because CHK was successful in opposing the motion for reconsideration.

Finally, CHK would derive an unfair advantage by changing its position. CHK has already delayed Epsilon's efforts to obtain general declaratory relief to vindicate its right to drill new wells absent CHK's participation by forcing Epsilon to file a new lawsuit. If CHK is permitted to change its position and prevent Epsilon

11

from proceeding in that new lawsuit by arguing that the right was already at issue in the prior lawsuit now pending in the Third Circuit, it will bring Epsilon's efforts to vindicate its valuable property rights to a halt. *Scarano v. Cent. R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel forbids use of "intentional self-contradiction ... as a means of obtaining unfair advantage"). Under these circumstances, CHK is judicially estopped from changing its position in order to further delay Epsilon's right to obtain a declaratory judgment to vindicate its general rights under the JOAs.

**B.** **CHK Cannot Establish Any of the Four Factors Required for a Stay**

Even if the doctrine of judicial estoppel did not apply, the Motion to Stay would still fail. "As numerous courts in the Third Circuit and the Middle District have held, '[i]n determining whether to grant a motion to stay, courts should consider: (1) the length of the requested stay; (2) the 'hardship or inequity' that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; (4) whether a stay will simplify issues and promote judicial economy.'" *Barnard v. Lackawanna Cnty.*, No. CV 3:15-2220, 2016 WL 362424, at *2 (M.D. Pa. Jan. 29, 2016) (citing cases).

"The Third Circuit has further noted that, '*efficiency* does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum.'" *Id.* (emphasis in original) (citing *CTF Hotel Holdings, Inc v.*

*Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) (noting that convenience of the moving party was insufficient to warrant a stay or override a party's contractual right to litigate)).  In this instance, not a single one of the four requisite factors supports CHK's requested stay.

### 1.    The Indefinite Stay That CHK Seeks is Unreasonable in Duration

In assessing the duration of the requested stay, this Court has concluded that a stay that might last from 180 to 270 days involves a "significant amount of time to halt litigation, and has a direct bearing on the hardship or potential injury that the non-movant would suffer if the stay were granted."  *Barnard*, 2016 WL 362424, at *2.  The very cases upon which CHK relies confirm that stays in excess of 90 days are typically unreasonable in duration.

For example, in *Vasvari v. Rite Aid Corp.* No. 09-2069, 2010 WL 3328210, (M.D. Pa. Aug. 23, 2010), the Court refused to impose a stay during the pendency of an appeal that would exceed 90 days in duration.  *Id.* at *2.  Because the appellate court had already conducted oral argument, the Court determined that the proposed stay was likely to remain in place for a few months, but limited the stay to a maximum of 90 days:

> We acknowledge that, on its face, Defendants are requesting a stay of indefinite duration-a time-frame that would typically compel denial of the Motion.  Neither the Court nor the parties can predict when a decision will be rendered by the Third Circuit in this case of first impression.  Nonetheless, the matter was argued before the Third Circuit two months ago, so we can reasonably expect a decision to be

13

rendered in at least the next few months.  Thus, to balance the interests of each party and our previously-articulated interest in the outcome of that appeal, we will grant the stay (also taking into consideration the other factors, discussed below), but will only grant it for a certain duration.  We will lift the stay when we receive the decision of the Third Circuit in *Parker* or in ninety (90) days of the date of this Order; whichever is sooner, absent good cause to revisit our determination.

*Id.* (internal citations omitted); *cf Germann v. Watts Regulator Co.*, No. 1:15-CV-1037, 2015 WL 9182805, at *2 (M.D. Pa. Dec. 17, 2015) (denying motion for stay because, unlike the unique circumstances at issue in *Vasvari*, the stay at issue was open-ended); *but see Cliffstar Corp. v. Ajinomoto Co., Inc.*, No. 09-3867, 2010 WL 11710671, at *2 (E.D. Pa. Nov. 10, 2010) (noting that, because the appellate briefing had been completed, the duration of the stay was more definite).[1]

In assessing the duration of a requested stay, trial courts also consider whether the other proceeding might moot the lawsuit to be stayed.  In *Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-2926, 2004 WL 1615307 (E.D. Pa. July 26, 2004), another distinguishable case that CHK cites, the court stayed a lawsuit pending the resolution of an administrative proceeding intended to determine if the patent at issue was invalid.  *Id.* at *7.  The party seeking the stay conceded that, if the administrative proceeding resulted in a finding that the patent was invalid, it would dismiss its claims in the district court.  *Id.*

---

[1] While the Third Circuit in *Cheyney State College Fac. v. Hufstedler,* 703 F.2d 732 (3d Cir. 1983), affirmed a stay during the pendency of an administrative proceeding, the Third Circuit emphasized that the trial court require check-ins at 90-day increments in order to consider lifting the stay.  *Id.* at 737-38.

The stay that CHK requests in this instance is open-ended. Contrary to CHK's contention, the fact that the briefing in the Third Circuit is scheduled to close in three months—in October 2022—does not render the stay definite in duration. CHK has not requested a stay that terminates after the Third Circuit briefing concludes. Instead, CHK has requested a stay that would remain in place until the Third Circuit issues an opinion. During mediation, the Third Circuit advised the earliest that the parties can expect an opinion would be the Spring of 2023. And unlike *Smithkline*, there is no possibility that the Third Circuit opinion will moot this lawsuit. Epsilon will proceed with its claims regardless of the outcome of the Third Circuit appeal.

In short, the stay that CHK seeks would likely remain in place for ***more than a year***, exponentially longer than the durations that this Court has found to be reasonable. This fact requires the Court to deny the Motion to Stay.

### 2. CHK Would Not Suffer any Hardship or Inequity in the Absence of a Stay

In order to prevail, CHK must prove that it faces a "clear case of hardship or inequity" in the absence of a stay. *Am. Builders Ins. Co. v. Keystone Insurers Grp., Inc.*, No. 4:19-CV-01497, 2020 WL 4903827, at *2 (M.D. Pa. Aug. 20, 2020) (denying motion to stay where moving party failed to show "a clear case of hardship or inequity"). CHK cannot satisfy this heavy burden.

Importantly, CHK cannot merely demonstrate that it would be inconvenienced absent a stay. *CTF Hotel*, 381 F.3d at 139 (finding convenience of

moving party was not enough to warrant a stay). In an attempt to satisfy its burden, CHK contends that the parties would be forced to "rehash" arguments that are currently pending with the Third Circuit (such as the indispensable party argument) and engage in discovery while those arguments are pending on appeal. This contention is misguided.

First, as set forth above, the inconvenience associated with "rehashing" non-dispositive arguments is insufficient to warrant a stay. Second, any discovery conducted in this lawsuit will be necessary and beneficial in the future. Epsilon intends to pursue its request for general declaratory relief in any available jurisdiction regardless of the manner in which the Third Circuit rules in the pending appeal. Third, the parties have acknowledged that the discovery required will not be extensive.[2] This fact further confirms that CHK will not suffer hardship. *See Cunningham v. M & T Bank Corp.*, No. 1:12-CV-1238, 2014 WL 131652, at *4 (M.D. Pa. Jan. 14, 2014) (denying motion to stay even while a companion case remained pending in the Third Circuit because the limited discovery would not constitute a burden). Permitting Epsilon to pursue efforts to vindicate its valuable property rights under the JOAs far outweighs any inconvenience that CHK might incur in conjunction with participating in discovery regarding those rights.

---

[2] In fact, CHK successfully opposed any discovery in the preliminary injunction proceeding on the basis that no such discovery was necessary.

### 3. Epsilon Would Face Significant Hardship if the Court Were to Grant the Requested Stay

Epsilon need only show that there is a "fair possibility" of harm for this factor to weigh in its favor. *Am. Builders*, 2020 WL 4903827, at *2 (denying motion to stay where there was a fair possibility of harm to the non-moving party). In addressing the hardship imposed upon Epsilon, CHK suggests that a stay will benefit Epsilon by preventing it from incurring further legal costs. This suggestion is specious. As Epsilon has consistently argued since filing its initial lawsuit in 2018, Epsilon is seeking to vindicate its tremendously valuable property rights to drill new wells in the Auburn Development. Epsilon's litigation costs in order to vindicate that valuable right are not a hardship.

CHK's failure to consider Epsilon's valuable interest in drilling new wells in the Auburn Development is fatal to its Motion to Stay. As set forth above, the pace at which CHK has drilled new wells in the Auburn Development has plummeted in recent years. The delay in vindicating Epsilon's rights so that it can resume the active drilling of new and lucrative wells in the Auburn Development will cause irreparable harm to Epsilon. *Barnard*, 2016 WL 362424, at *3 (proposed stay would result in prejudice to non-moving party). Because Epsilon can show far more than a "fair possibility" of harm, CHK's request for a stay should be denied.

17

### 4.    A Stay Would Not Simplify the Issues or Promote Judicial Economy

For the same reasons that judicial estoppel applies, a stay would not simplify the issues or promote judicial economy.  This Court made clear in denying Epsilon's reconsideration motion that the sole issue involved in this lawsuit ***is not*** involved in the matter now pending before the Third Circuit.  The Court (1) dismissed the prior lawsuit without leave to amend but (2) noted that the dismissal was without prejudice to file this new lawsuit.  While Epsilon appealed the dismissal to challenge the Court's application of the 90-day commencement deadline to new wells, it had no choice but to file this new lawsuit to address the separate issue regarding its general right under the JOAs to drill new wells without CHK's participation.

For this reason, the Third Circuit's ruling will not help to resolve the separate dispute in this lawsuit regarding Epsilon's right to drill new wells in the event that CHK declines to participate.  Even if the Third Circuit were to rule that the other JOA parties are indispensable parties, and if that ruling destroyed diversity jurisdiction, Epsilon would re-file in state court.  Any time and resources expended in this litigation will therefore be useful to the parties in the future regardless of the manner in which the Third Circuit appeal is resolved.[3]  *See Am. Builders*, 2020 WL

---

[3] The cases upon which CHK relies are inapplicable.  *See Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (staying claim in favor of arbitration and because damages would be exactly the same); *Structural Grp., Inc. v. Liberty Mut. Ins. Co.*, No. 07-1795, 2008 WL 4616843, *5 (M.D. Pa. Oct. 16, 2008) (denying motion to stay because the parties had not raised the issue); *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (finding consolidation was warranted where plaintiff had filed a second complaint to avoid the impact of failing to demand a jury trial in her initial complaint).

4903827, at *2 (denying motion to stay where the moving party failed to demonstrate that a stay would promote judicial economy).  The parties will eventually need to conduct discovery related to the parties' rights under the JOAs regardless of the outcome of the Third Circuit appeal.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should summarily deny the Motion to Stay and order CHK to file a responsive pleading.

Dated: July 8, 2022                          Respectfully submitted,

                                             /s/ *Gregory J. Krock*
                                             Gregory J. Krock
                                             Pa. I.D. No. 78308

                                             **McGUIREWOODS LLP**
                                             Tower Two-Sixty
                                             260 Forbes Avenue, Suite 1800
                                             Pittsburgh, PA 15222-3142
                                             (412) 667-6042 (Telephone)
                                             (412) 402-4162 (Facsimile)
                                             gkrock@mcguirewoods.com

                                             Elizabeth Thomas
                                             Pa. I.D. No. 322002
                                             **McGUIREWOODS LLP**
                                             201 North Tryon Street, Suite 3000
                                             Charlotte, NC 28202-2146
                                             (704) 373-8060 (Telephone)
                                             (704) 353-6190 (Facsimile)
                                             ethomas@mcguirewoods.com

Jonathan T. Blank
*Pro Hac Vice Forthcoming*
**McGUIREWOODS LLP**
323 Second Street SE, Suite 700
Charlottesville, VA 22902
(434) 977-2500 (Telephone)
(434) 980-2222 (Facsimile)
jblank@mcguirewoods.com

*Counsel for Plaintiff Epsilon Energy
USA, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>REGARDING WORD COUNT</u>

The undersigned hereby certifies that this memorandum of law complies with the word-count limitations contained in Rule 7.08(b) of the Local Rules of the United States District Court for the Middle District of Pennsylvania. In particular, the memorandum (including the caption and signature block) contains 4,807 words according to the word count function in the Microsoft Word software with which this memorandum was produced.

/s/ Gregory J. Krock
Gregory J. Krock

**McGUIREWOODS LLP**
Tower Two–Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222–3142
(412) 667–6042

*Counsel for Plaintiff Epsilon Energy USA, Inc.*

## CERTIFICATE OF SERVICE

I, Gregory J. Krock, hereby certify that a true and correct copy of the foregoing **Memorandum of Law in Opposition to Defendant Chesapeake Appalachia, LLC's Motion to Stay Pending Resolution of Appeals Before the United States Court of Appeals for the Third Circuit** was served upon all counsel of record via the Court's ECF system on the 8th day of July 2022.


/s/ *Gregory J. Krock*
Gregory J. Krock