## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EPSILON ENERGY USA, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 3:22-cv-00679** |
| | : | |
| **CHESAPEAKE APPALACHIA, L.L.C.,** | : | **JUDGE WILSON** |
| | : | |
| | : | **ELECTRONICALLY FILED** |
| **Defendant.** | : | |

## CHESAPEAKE APPALACHIA, L.L.C.'S REPLY BRIEF
## IN SUPPORT OF MOTION TO STAY

### INTRODUCTION

A stay of this litigation pending the resolution of appeals before the United States Court of Appeals for the Third Circuit in *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.,* Nos. 22-1280 and 22-1376 ("*Third Circuit Appeals*") is warranted to simplify the issues, conserve judicial resources and avoid the risk of inconsistent rulings and serial appeals. Epsilon's opposition to the stay, while predictable, is not faithful to the history of this dispute or to the potentially dispositive issues on appeal in *Epsilon III*.

**First**, the doctrine of judicial estoppel does not preclude Chesapeake from seeking a stay of this litigation. A "harsh" remedy, judicial estoppel is inapplicable where, as here, both an inconsistent position and bad faith are absent. Epsilon's allegations of inconsistency are based on its misapprehension of Chesapeake's

position in opposition to Epsilon's Motion for Reconsideration of the Court's dismissal of *Epsilon III.* That misapprehension permeates Epsilon's opposition and precludes the harsh remedy of judicial estoppel.

*Second*, Epsilon's application of the factors concerning issuance of a stay is shallow. Epsilon goes to great lengths to characterize Chesapeake as requesting an "indefinite" stay. But the stay sought by Chesapeake can be easily fashioned in accord with Third Circuit precedent to avoid an indefinite duration. Also missing from Epsilon's opposition is a true analysis of the balance of harms presented by this request. Four years (and four cases) into this dispute, it is not sufficient to claim in conclusory fashion a loss of development opportunity absent some concrete showing of depletion of its owned resources. Epsilon thus cannot even meet the low bar it set for itself to demonstrate a "fair possibility" of harm. A stay of this litigation pending resolution of the *Third Circuit Appeals* serves to simplify the issues in this matter and promotes judicial economy.

## ARGUMENT

In the *Third Circuit Appeals* resulting from *Epsilon III*, the Third Circuit is poised to determine (1) whether this Court erred in finding that other parties to the JOAs are not "indispensable" to the litigation; and (2) whether the operator-shifting provision of Article VI.2(a) could allow Epsilon to appoint itself or its affiliate "Operator" without the consent or participation of *any* other JOA Party. It

is within the inherent authority of the Court to stay this litigation pending those determinations. Epsilon's opposition is without merit.

**I.     Epsilon's Invocation of Judicial Estoppel Is Unwarranted Given the Absence of _Both_ an Inconsistent Position _and_ Bad Faith.**

Epsilon's citation to the doctrine of judicial estoppel is misplaced. First, Epsilon is wrong that Chesapeake's request for a stay now is materially inconsistent with its prior position in opposition to Epsilon's Motion for Reconsideration of the Court's dismissal of _Epsilon III_. Opp. Br. at 10-12. In that briefing, Chesapeake argued that reconsideration was inappropriate because Epsilon was belatedly attempting to save its declaratory judgment claim by recasting it as independent of its expired well proposals. _See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.,_ No. 1:21-CV-658, ECF 125 (M.D. Pa. Oct. 18, 2021). In support, Chesapeake cited numerous instances sourced to the pleadings in that litigation, where Epsilon had explicitly tied its request for declaratory relief to well proposals which had expired. _Id._ at 12-14. The Court accepted that argument, writing:

> Thus, while Epsilon is correct that it could have proceeded with a declaratory judgment claim based on the language of the of the JOAs generally rather than the specific wells proposed in this case, the claim that it actually raised sought declaratory relief only with regard to the proposed wells.

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, No. 21-658, 2022 WL 178816, at *7 (M.D. Pa. Jan. 18, 2022).

Chesapeake's request for a stay now is entirely consistent with its previously advanced, and accepted, position. Indeed, unlike in *Epsilon III*, Chesapeake's argument now does not turn on Epsilon's strategic decision to link its declaratory judgment claim to invalid well proposals. Rather, Chesapeake argues that a stay is warranted here because the Third Circuit is poised to determine (1) whether this Court erred in finding that other parties to the JOAs are not "indispensable" to the litigation; and (2) whether Article VI.2(a) of the JOAs allows Epsilon to appoint itself or its affiliate "Operator" without the consent or participation of *any* other JOA Party.[1] The potentially dispositive effect of the Third Circuit's rulings on

---

[1] Epsilon misstates the record before this Court and then advances a flawed estoppel argument fully dependent on its mischaracterizations. Specifically, Epsilon asserts that "CHK argued that the JOAs require unanimous consent to drill a new well, such that Epsilon cannot drill any of its proposed wells if CHK declines to participate in those wells," Opp. Br. at 7 (citing generally Chesapeake's Motion to Dismiss, its Brief in Support, and Epsilon's Opposition at ECF Nos. 109, 110 and 111), and that the "Court concluded that the JOAs are ambiguous as to whether unanimous consent is required to drill a new well when CHK declines to participate and refuses to act as the operator." Opp. Br. at 7 (citing Mem. Op. on Motion to dismiss at ECF 122 at 17). To be clear, Chesapeake did not argue that the JOAs imposed a "unanimous consent" requirement for subsequent wells. Chesapeake argued that Art. VI.2(a)'s operator-shifting provision did not apply to subsequent well proposals, and even if it did, Epsilon could not unilaterally appoint itself operator to drill wells that had the consent of no other JOA party. The Court determined that "multiple consenting parties" would not be required if Article VI.2(a) applied to subsequent wells, *see* ECF 121 at 19, and Chesapeake has placed the "multiple consenting parties" determination squarely

either of these issues *in this litigation* is beyond cavil.  Should the Third Circuit

determine the Absent JOA Parties in *Epsilon III* to be indispensable to that

litigation, that holding will carry here, destroying subject matter jurisdiction and

rendering moot any progression of this matter.  Similarly, the Third Circuit's

decision in *Epsilon III* regarding whether Epsilon may unilaterally appoint itself

"Operator" is dispositive in the adjudication of Epsilon's rights under the JOA.

Assuming *arguendo* that this Court were to find an inconsistency, however,

Epsilon has not met its burden for imposition of the harsh remedy of judicial

estoppel.   "Inconsistencies are not sanctionable unless a litigant has taken one or

both positions in bad faith—i.e., with intent to play fast and loose with the court."

*Montrose Med. Grp. Participating Savings Plan v. Bulger*, 243 F.3d 773, 780-81

(3d Cir. 2001) (internal quotations and citations omitted).  "Bad faith" may only be

found if (1) the alleged transgressor "has behaved in a manner that is somehow

culpable," *id.* (citing, *inter alia*, *Ryan Operations G.P. v. Santiam-Midwest Lumber

Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("An inconsistent argument sufficient to

invoke judicial estoppel must be attributable to intentional wrongdoing.")(internal

quotations and citations omitted); and (2) that culpable be directed toward the

court.  *Id.* ("Judicial estoppel is intended to protect the courts rather than the

---

before the Third Circuit on appeal.  Epsilon's latest complaint treats this threshold
issue that is before the Third Circuit as settled law.

litigants.") (internal citations omitted).  Indeed, a finding of bad faith "must be based on more than inconsistency in factual positions."  *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 111 (3d Cir. 1999).

Epsilon has not, and cannot, show "bad faith," or intent to "play fast and loose with the Court," by Chesapeake.  Chesapeake's request is grounded not in an effort to deceive the Court but rather to simplify issues, conserve judicial resources and avoid the risk of inconsistent rulings and serial appeals.  Epsilon's effort to impugn that intent, supported by nothing but conclusory allegation and misunderstanding, is a red herring and should be dismissed.

## II. Chesapeake Has Established, and Epsilon Cannot Persuasively Dispute, That a Stay of This Litigation Pending Resolution of the *Third Circuit Appeals* in *Epsilon III* Is Warranted.

A court should consider the following four practical considerations when exercising its discretion to stay litigation: "(1) the length of the requested stay; (2) the 'hardship or inequity' that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; (4) whether a stay will simplify issues and promote judicial economy."  *See Structural Grp., Inc. v. Liberty Mut. Ins. Co.*, No. 07-1795, 2008 WL 4616843, *5 (M.D. Pa. Oct. 16, 2008) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).  These factors weigh in favor of a stay pending resolution of the *Third Circuit Appeals* in the previously-filed *Epsilon III* matter.

A.   **A stay pending resolution of the Third Circuit Appeals is reasonable in duration when cabined by a 90-day reporting interval.**

Epsilon argues that the stay sought by Chesapeake is unreasonable in its duration.  Chesapeake does not dispute that stays of an indefinite length are disfavored in the Third Circuit.  *See Cheyney State Coll. Fac. v. Hufstedler,* 703 F.2d 732, 738 (3d Cir. 1983) ("We emphasize that *Landis* approved stays of moderate length, and not those of indefinite duration which require a party to take affirmative steps for dissolution.").  But Chesapeake's requested stay is neither indefinite in length nor unjustified in circumstance.

While Epsilon spills a lot of ink attempting to distinguish case law cited by Chesapeake in its opening brief, its effort is futile.  For one, Epsilon notes only in passing that the Third Circuit has affirmed the issuance of a stay during the pendency of an administrative proceeding where the district court had required that defendants "report at 90-day intervals."  *Cheyney State Coll. Fac.,* 703 F.2d at 738. And Epsilon fails altogether to discuss, distinguish, or even cite, well-established case law that the pendency of a prior action or appeal involving the same subject matter militates in favor of a stay in a subsequently-filed matter.  *See Walton v. Eaton Corp.,* 563 F.2d 66, 70 (3d Cir. 1977) ("The pendency of a prior pending action in the same federal court is ground for abatement of the second action [because] there is no reason why a court should be bothered or a litigant harassed

7

with duplicating lawsuits on the same docket.") (citations and quotations omitted);

*Berger v. Weinstein,* No. 08-4059, 2008 WL 4858318 (E.D. Pa. Nov. 10, 2008)

(granting stay of second action involving the same parties and issues pending

resolution of Third Circuit appeal of prior action).

Moreover, Epsilon is incorrect in its assertion that "there is no possibility

that the Third Circuit will moot this lawsuit." Opp. Br. at 15. In the *Third Circuit*

*Appeals,* Chesapeake is challenging, *inter alia*, whether the Court erred in finding

that the Absent JOA Parties are not "indispensable" to litigation requesting

interpretation of the JOAs. If the Third Circuit determines that the Absent JOA

Parties are indispensable, this Court would be deprived of subject-matter

jurisdiction in *Epsilon III* and this matter. *Ex parte McCardle,* 74 U.S. (7 Wall.)

506, 514, 19 L. Ed. 264 (1868) ("Without jurisdiction the court cannot proceed at

all in any cause. Jurisdiction is power to declare the law, and when it ceases to

exist, the only function remaining to the court is that of announcing the fact and

dismissing the cause.").

    **B.**    **The balance of harms between Chesapeake and Epsilon weighs in favor of issuance.**

Epsilon also argues that, in the absence of a stay, Chesapeake would not

suffer any hardship because retreading arguments currently on appeal would be a

mere "inconvenience" and any discovery conducted will be necessary and

beneficial in the future. Opp. Br. at 16. This, too, is incorrect. Beyond the cost to

both the parties and the Court of relitigating issues currently on appeal, which is

significant and not so glibly dismissed, the Third Circuit's resolution of the

indispensability of the Absent JOA Parties is determinative of subject matter

jurisdiction.  In a last-ditch effort to suggest discovery should go forward

irrespective of subject matter jurisdiction, Epsilon ignores the reality that discovery

in a matter lacking indispensable parties (and subject matter jurisdiction) would be

improper. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998)

("Without jurisdiction the court cannot proceed at all in any cause."); *Mann v.*

*Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (discovery properly stayed where

pending court determination may render discovery "futile"); *Berger,* 2008 WL

4858318, at *4 (finding that progressing a second action concerning the same

parties and issues pending resolution of a Third Circuit appeal will "waste the

parties' time and money.").  Further, if the Absent JOA Parties are found

indispensable by the Third Circuit in *Epsilon III*, the contours of discovery in any

later-filed state litigation involving those additional parties would necessarily

enlarge, leaving Chesapeake with the burden of discovery obligations that would

unavoidably be both new, and in part, duplicative.  Thus, progressing this case

through potentially futile discovery in the absence of a determination by the Third

Circuit is prejudicial to Chesapeake and a stay is warranted to prevent further

expense and effort in this *fourth* matter between the parties.

Epsilon also fails to demonstrate even a "fair possibility" of harm if this action were stayed pending appeal. Owing to its conduct first seeking relief in violation of the Bankruptcy Court's discharge injunction in *Epsilon II* and next proposing well commencement dates in violation of the JOAs in *Epsilon III*, this is now the *fourth* federal court action brought against Chesapeake within the span of four years. With two pending matters, Epsilon cannot now credibly claim hardship from a stay issued in the interest of judicial economy. What's more, while Epsilon now asserts "irreparable harm" based on its "valuable interest in developing new wells," Epsilon fails to demonstrate any anticipated or imminent loss, or drainage, of natural gas reserves in the period of a stay.

**C.    A stay pending resolution of the Third Circuit Appeals will simplify issues and promote judicial economy.**

Unable to dispute that a stay pending resolution of the *Third Circuit Appeals* will simplify the issues in this litigation and promote judicial economy, Epsilon again confuses the Court's decision denying its Motion for Reconsideration in *Epsilon III* and ignores the clear logic of a stay. Epsilon confoundingly argues that "[t]his Court made clear in denying Epsilon's reconsideration motion that the sole issue involved in this case *is not* involved in the matter now pending before the Third Circuit." Opp. Br. at 18. Epsilon continues that "it had no choice but to file this new lawsuit to address the separate issue regarding its general right under the JOAs to drill new wells." *Id.*

That characterization of the Court's decision is revisionist, at best. As noted above, that decision addressed whether Epsilon's declaratory judgment claim in *Epsilon III*, as pled and advanced, was independent of active well proposals. While the Court found that Epsilon's claim was dependent on well proposals, its determination was limited to the operative pleading in *Epsilon III*. It is not credible to suggest that the Court's threshold determinations that are on appeal in the Third Circuit are "separate" and of no relevance here. Tellingly, Epsilon recently certified to the Securities & Exchange Commission ("SEC") *after* filing *Epsilon IV* that it "asserts the similar claims as in" *Epsilon III*. (*See* Epsilon Energy Ltd. FORM 10-Q, May 11, 2022 at pp. 18, 34, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001726126/000155837022008 381/epsn-20220331x10q.htm (last visited July 22, 2022)). Now, faced with a motion to stay *Epsilon IV* while "the similar claims" in *Epsilon III* are addressed by the Third Circuit, Epsilon pivots and contends to this Court that *Epsilon IV* is a "one-count lawsuit [with] a single issue" not similar to *Epsilon III*. The reality is that the issues in this case are similar to and overlap with *Epsilon III* and Epsilon knows it. It is Epsilon that is playing fast and loose.

The Third Circuit's determinations regarding (1) the "indispensability" of other parties to the JOAs and (2) whether Article VI.2(a) of the JOAs allows Epsilon to appoint itself or its affiliate "Operator" without the consent or

participation of *any* other JOA Party may be dispositive in this matter. The threshold issue of indispensability may render futile any further effort and time expended by the Court and its personnel. Further, even in the event of affirmance, the Third Circuit's resolution of non-jurisdictional appellate issues will narrow and simplify the Court's remaining interpretative task. *See Berger,* 2008 WL 4858318 at *4 (granting stay pending resolution of an appeal of the prior preceding action "will clarify" the issues of the second litigation); *Cliffstar Corp. v. Ajinomoto Co., Inc.*, No. 09-3867, 2010 WL 11710671, at *2 (E.D. Pa. Nov. 10, 2010) (granting stay pending appeal where "resolution of the matter will be instructive on, and will simplify, the [] issues that are certain to arise in the present case.").

## CONCLUSION

For the above reasons, and for those more fully contained in its opening brief, Chesapeake respectfully requests that the Court stay this proceeding until a decision is rendered by the United States Court of Appeals for the Third Circuit in

the matters docketed to *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, Nos. 22-1280 and 22-1376.

Respectfully submitted:

/s/ John B. Dempsey

Daniel T. Brier
John B. Dempsey
Nicholas F. Kravitz
Richard L. Armezzani

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503          Attorneys for Defendant, Chesapeake
(570) 342-6100              Appalachia, L.L.C.

Date: July 22, 2022

## <u>CERTIFICATE OF SERVICE</u>

I, John B. Dempsey, hereby certify that a true and correct copy of the foregoing Reply Brief in Support of Motion for Stay was served upon the following counsel of record via the Court's ECF system on this 22nd day of July 2022:

Gregory J. Krock, Esquire
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA  15222

Elizabeth M. Thomas, Esquire
McGuireWoods LLP
Fifth Third Center
201 North Tyron Street, Suite 3000
Charlotte, NC 28202-2146

Johnathan T. Blank, Esquire
McGuireWoods LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902


/s/ John B. Dempsey
John B. Dempsey